## Flack et al. v. Domestic Life & Accident Insurance Company et al.

(Decided December 17, 1929.)

MATT J. HOLT for appellants.

BURKE & LAWTON for appellees.

OPINION OF THE COURT BY COMMISSIONER STANLEY—Affirming.

This suit was instituted by the appellants, minority stockholders in the Domestic Life & Accident Insurance Company, for the benefit of the stockholders, against the company and its officers, charging that they had mismanaged its affairs, and especially that they had used the money of the insurance company for the purpose of private profit. This was accomplished, according to the allegations of the petition, by the organization of the Reliance Finance Corporation, in which the appellees Hughes, Smith, and Turner, who are the president, vice president and secretary, respectively, of the insurance company, are the only stockholders. It is charged that this corporation bought and sold stock of the insurance company with funds of the insurance company. A mandatory injunction was asked requiring the appellees to permit an examination of the books both of the insurance company and the finance corporation and for an accounting of the business transacted between the two companies. During the progress of the suit the books of both companies were examined by expert accountants and a complete exposure made of all their records.

Without entering into a review of the evidence it may be said that there was much to be criticized in the interlocking arrangements between them. There was an economic dependence the one upon the other which might have resulted in an unjustifiable loss to the stockholders of the insurance company.

It is argued in brief for the appellants that they had a right as stockholders to see the books of the company and to require an accounting. Undoubtedly their contention as a matter of legal right is sound, but there is no

reason to complain now for the results which they sought have been accomplished. It remains to be seen whether or not the insurance company and its stockholders were damaged by reason of these practices which are not considered legally proper. The record discloses that these practices were criticized by auditors of the Insurance Department of Kentucky, who made three examinations of the books of these companies during the pendency of this action. It appears that the officers were advised of the impropriety of the practices, yet it was found that the company had had need of some such organization as the finance corporation for the purpose of handling its stock. We adopt as our own a portion of the opinion of the learned chancellor in which he says:

> "It is undoubtedly true that Hughes, Smith and Turner adopted methods which cannot be approved. Loans were made by the Insurance Company on pledges of its own issued stock, a thing which is, I believe, contrary not only to sound practice but to the law. It was in this way that the Finance Corporation obtained money for its operation. Moreover, it cannot be disputed that the organization by officers of a corporation of another corporation to deal in the securities of the first corporation is a practice which is likely to lead to abuses and ought not to be countenanced. It was because of a disapproval of these practices that, at an early stage in this litigation, I required Hughes, Smith and Turner to submit for examination the books not only of the insurance company but of the Finance Corporation.
>
> "But when we come to examine the evidence brought out by this scrutiny of the records and the examination of witnesses we find that no harm has resulted to the Insurance Company. Upon the contrary, I think its prosperity has been aided by the operations of the Finance Corporation. This company, organized by colored people for the purpose of insuring the lives of colored people, came into being in 1920. It began operations in 1921 with an authorized capital of $200,000.00 and its premium income in that year was $21,809. At the end of 1921 its insurance in force was $1,076,582 and its surplus was $5,655. On the first of January, 1927, its premium income was more than a quarter of a million dollars, its insurance in force was more than $6,500,000,

its capital stock outstanding was $120,000 and its surplus $103,015. This is a very handsome record and it could hardly have been accomplished if the Company had been mismanaged or its assets diverted to the personal gain of its officers. This view of the sound condition of the Company is fully borne out by the reports of the examiners from the Insurance Commissioner's office which are found in its record.

"As to the right of plaintiffs to recover on behalf of the Insurance Company profits made by the Finance Corporation in dealing in its stock, even if it be conceded that the Finance Corporation is liable to the Insurance Company for such profits, the proof fails to show that there are any such profits. The burden of proof is on plaintiffs and they have failed to sustain it."

If all of the contentions made by the appellants should be sustained, we must answer: "Injuria absque damno" (wrong without damage or loss) will not sustain an action. The records which have been produced show that the finance corporation and its officers are not indebted to the insurance company at this time, and that there has now been a complete accounting.

The judgment is affirmed.